May it please the Court, I'm David Dial. I represent the Venetian Casino and Resort. As Your Honor, I know we are here before you based upon an order that was entered by the United States District Court confirming what was contended to be a partial arbitration award. We're here appealing pursuant to 9 U.S.C. section 16 A.1.D. A question was posed by the Court in communication to counsel to address the appealability of this order. I simply would cite to the plain language of 9 U.S.C. section A.1.D. which says that an appeal may be taken from an order confirming an award or partial award. Well, it can't be an award. Partial award would be your only hope, correct? Correct. But it certainly just seems like a non-final arbitration award. If that's the case, then the United States District Court should not have entered an order confirming it and entering judgment. And that would be error on his part because pursuant to 9 U.S.C. 9 and 9 U.S.C. 10 A.4, the Court cannot enter an order confirming and entering judgment on an arbitration award unless it is a final award of all issues submitted to the arbitrator. So what would we do? Vacate the District Court's order and remand it to the District Court? Or just reverse as an improper exercise of authority under 9 U.S.C. 9 in that he should not have confirmed this award because it was not final? Well, if we – the question is whether we have jurisdiction to make that determination. Clearly you would. I can't think of an instance where the District Court would have improperly exercised jurisdiction in that the award was not final, yet the party who's been aggrieved by that wouldn't have an immediate appellate right under 9 U.S.C. 16 A.1.D. to come and say that was improper. It wasn't final. It wasn't properly before the United States District Court. He should not have entered judgment on it. Otherwise – So the issue is really whether that was, at least at this phase of the case, for this portion of the case, whether that order of the arbitrator or the arbitrator's decision was a final decision. Obviously it wasn't an award because there were other things to be done. But was it a final decision of the issues that were submitted to the arbitrator? I think that is the issue, and the issue is finality. We understand and know in the cases actually asked by the court, the Hart case, Hart's surgical case, and the Bull Information Systems case, the court has started chipping away, at least the First Circuit, not this circuit, has started chipping away at the long-held precedent that arbitration awards that don't resolve the entire issues that have been submitted to arbitration are not subject to judicial review. There has been, in Hart's surgical and some other cases, some chipping away at that long-standing policy. However, this decision, this arbitrator's decision, clearly doesn't fall within those exceptions. There's been no agreement by the parties to bifurcate these particular changes from all the other hundreds of changes that have been submitted to this arbitrator for review. I think it would probably be educational to understand exactly what's happened here. The parties were ordered to arbitrate over 900 distinct, I mean, not distinct changes, 900 changes. The arbitrator would issue decisions, and then we would understand whether at the end of the day, after all of those have been heard, whether the contract price would be adjusted up or down, and whether the time for performing the work would be extended or retracted, made less. We only have begun hearing, we've been hearing these since August of 2000, these several hundred changes. There have been many interim decisions in that time period, beginning back in November of 2000, I think, was when the first decision was rendered. No party has ever sought to confirm any of those awards, because the parties clearly understood that those were interim decisions, that at the end of the day, essentially, the scorecard would have to be tallied up, and then a decision rendered as to what the result of all the decisions on all the issues were. Obviously, if this particular decision was a final decision that could be confirmed, why weren't all the others that neither party has moved to confirm? And if they are, does it mean that since the one-year period under the Federal Arbitration Act and the one-year period under the Nevada statute has run, that those are no longer enforceable awards? Clearly, the parties, by their actions, indicated that no one believed and agreed that these interim decisions of this arbitrator were going to be final decisions that could be confirmed and made into a judgment. In addition, the arbitrator's plain language shows that this was not a final award. He acknowledges that there's many other issues that must be resolved, some by him, some in another forum, before the ultimate issue of liability or damages can be determined. This award is not even a finding of liability. It's essentially a finding of fact that these particular changes, when viewed only in and of themselves without considering other relevant evidence and without considering other changes that are going to be considered later by the arbitrator, would have extended the schedule for a period of time. That seems to be the question, then. What was submitted to this arbitrator for decision? Did he decide everything that he was called upon to decide? If he did, then it's final. If he didn't, then I suppose it would not be. He clearly did not. And let me give you an easy example to understand. Remember, what was ordered to be arbitrated were several hundred changes. These are just a very few of those. Yeah, but these are the only ones that people are upset about. Apparently, his other decisions, nobody questions. These are the only ones that anyone has moved to confirm. I would tell you there are many that people are upset about. Okay. And some are happy about some of them. But the easiest example would be on that list of things to arbitrate, for instance, are a number of changes which reduced the scope of work. Work was deleted from the contractor's scope. There are also a number of claims related to the fact that the contractor did not perform the scope of work it was contractually obligated to perform. Those are on that list to be arbitrated, both in terms of cost impact and time impact. Obviously, to determine whether at the end of the day, once all the issues have been arbitrated, whether the schedule should be extended or drawn back and whether the contract price should be increased or decreased, you need to hear those issues as well, because they very likely will result in the schedule being drawn back. It doesn't seem like the 107 days really means anything, except they just can't relitigate that part of it, but then there's all these other things that are going to affect it. So 107 days is going to go by the wayside, right? I agree that's correct. That's why it should not have been confirmed. It was not a final decision on the issue of liability for time extension or damages. Well, it looks like an interlocutory order, but the fact that the trial judge made a mistake, does that give you jurisdiction here? It does, because Section 16A1D of the Federal Arbitration Act says you may take an appeal from an order confirming an award or a partial award. That's what he's done, and he's in fact entered judgment. The argument will be, as being made in these briefs, that the fact that there's a judgment that exists for 107 days means that the arbitrator no longer has jurisdiction to do anything about that. That would mean that all of these credit time changes couldn't be considered and then applied against the 107 days and an ultimate judgment made on all the issues. But it doesn't seem like the order precludes the parties from presenting the trier of fact with a whole bunch of other things. The order was argued, and we gave in the appendices to the briefs we showed, where the order was argued to the jury as a finding of fact that must be accepted by the jury and they must be bound by the 107 days. It was used in that fashion. The district court ruled that the parties are fired from relitigating this finding of the independent expert. That finding. However, the question is, what does that mean? There were objections posed in the state trial court over and over again saying that what was happening was relitigating. Our position was, no, we're simply now putting in the evidence that the arbitrator reserved. What did the state court do about that? They sustained many of those objections and the very evidence that the arbitrator said should be heard by the jury. And then what happened in the jury trial? That's what happened. Oh, and yeah. The trial was supposed to conclude in May of this year. It concluded. There was a verdict.  And if you were to contend, I suppose, that the trial court improperly permitted argument to the jury, that would be something the state appellate court would deal with. It might be something they deal with. But the issue here and the issue that is before this court is whether there should have been an order entered and a judgment entered, which was then paraded around in front of this jury. With all the authority of the United States district court behind it, with all the finality that was argued because it's a, quote, judgment. You can't question this. You must accept this. It is a matter of law and a matter of fact. We have to correct that with the district court. If the arbitrator did, in fact, decide everything that was presented to him at that time and his decision, and he made a decision on what was presented to him, that was the scope of the arbitration. He decided that. That would then be, it seems to me, a final decision by the arbitrator. He didn't say we have some other things to decide here. He said this is the issue I've been presented with. This is the way I decide it. Now you parties are going to have to take this decision and use it to a finder of fact who will then eventually determine who is entitled to what. It was not all the issues that were before him. Remember what the scope of the arbitration is. The scope of the arbitration is several hundred changes and their impact on schedule and cost. Not just these changes. And there was no agreement, as in some of these other cases, to bifurcate or to sever these particular changes, get a decision on them, and get a final award on them. There's simply nothing in the record that indicates that that was ever within the party's intent, the arbitrator's intent, or the court's intent when it ordered all of these issues to be arbitrated. If you get, if we were to decide the case exactly as you want here, as what you've purported, so is then that your evidence that the court erred in the jury trial? The evidence that the court erred will simply be that they improperly allowed an order. There will be many, many errors in the state jury trial that have nothing to do with this. But we will certainly order that it was prejudicial. If our decision was exactly as you're asking here, what are you planning, how does that affect your claims of error in the jury trial? We will certainly argue that it was error to have allowed this order to be presented to the jury, which we objected to at the time, made the exact same argument then, and lost. It's not an argument that we're coming back and backdooring. It's one that's been out there from the very beginning, that we believe that this order was an error, that we had appealed it, that it shouldn't be presented to a jury until its propriety has been determined by this court. It was up on appeal at the time. If LMB wanted to take the risk that it was a proper order and paraded around in front of this jury and argue that it bound them, that's a risk they took. They didn't have to take that. They knew it was on appeal. But this was presented to the state trial court as a motion for a new trial? It will be. It already has been and will continue to be argued that it was improper to have put this before the jury in the fashion that it was. It's essentially, again, I would say what this does from a policy reason, if you are going to have phased arbitrations in construction settings, and you do many times because you do have so many issues and you can't get good, sophisticated, experienced construction arbitrators to give you two months of their time in a row, so you end up coming up with schedules where you hear certain issues and then there's interim decisions made so the parties can essentially always know where they are. If you rule that this kind of decision is one that can be confirmed, you are then, every time a decision is made, if somebody is going to run and seek to get it confirmed to the United States District Court, there's going to be an appeal on it and you're going to have an avalanche of appeals growing out of the construction setting. It's clear here that there was no agreement by the parties or anyone else that these interim decisions were going to be made into final awards and judgments. What would be the ramifications of our conclusion that we have no appellate jurisdiction to hear this? You would be depriving us of a remedy provided to us by law where it says in the statute, I know that, but what would be the ramifications regarding the state jury trial? I don't know. We will still be arguing it was improper to put it before it. We will still continue to make that argument. However, we will have a judgment against us that we've not had a right to appeal or have heard. It will be a judgment that will be used to argue against the continuing authority of the arbitrator to continue hearing time extension claims, I suggest. Justice has been argued here. They argued that this arbitrator didn't even have authority to issue the clarification of the award. I suggest to you and I predict to you that if something's not done with this judgment, they will argue that he has no further authority to do anything that will impact the 107-day judgment entered by the federal court, which means that we will have reached a conclusion before the whole game has been played. Essentially, LMB liked the score at the end of the third inning and moved for trial strategy reasons for a confirmation of an award before the game was over. We hadn't heard all the other issues, and that clearly creates great prejudice for the Venetians. And, again, I must stress there are many, many awards, some that have been outstanding for three years, that no one has moved to confirm because everyone understood that these interim decisions were not final awards on either liability or damages. And even in the cases which allow partial or interim decisions to be subject to confirmation, those are all in cases either where there's been an agreement concerning bifurcation or an agreement that a discrete, severable, stand-alone claim would be presented to the arbitrator and a decision made that would no longer be impacted by the arbitrator continuing to exercise his authority. That's clearly not the case here. As the arbitrator continues to hear these other changes, most importantly the credit changes, his decisions very likely will impact whether there's been a 107-day time extension or not. Counsel, your time has expired. We'll hear from the other side. Thank you very much. Thank you. May it please the Court. My name is Jenny Fletcher. Along with my co-counsel, Kirk Harrison, we represent Laird McGovern Bovis, the Apple League. By way of introduction, we have just completed a nine-and-a-half-month jury trial in which most of the issues that are involved with disputes between these two parties were resolved in the state court of Clark County, Nevada. The verdict in that case will ultimately resolve the district court case below. We are here on a discrete issue of arbitrability and arbitration, and I'd like to address two principal points and then some sub-points specifically directed to this Court's directive that we consider the jurisdictional issue. The district court below correctly confirmed a final award on a discrete, stand-alone issue submitted to the arbitrator. What was really final about it since it just said the 107 days are subject to everything else in the world? The finality, Your Honor, dealt with the arbitrator's scope of submission, although it's correct that many other factors remained to be considered after the entry of that award. Those were not factors for consideration by this arbitrator. I'm seeing a very dangerous trend here, I mean, in terms of if you have all these 107 days and then you had three days here and you had five days there. I mean, are we going to have appeals just because it looked like an interlocutory order that was entered? I mean, are we going to get involved with all of these? No, Your Honor. The question here is what was the scope of the submission to this arbitrator and did he fully and completely execute that scope? The court below found as a fact in its confirming order that in fact the arbitrator had completely fulfilled his function. And if I might read that finding at page 3 of the confirming order. Page 111 of the Venetian Casino's excerpts of records. Yes, Your Honor. It's actually in there twice. The one I'm looking at is page 104. I expect that page 111 may also be it. It's the order of the federal district court that was entered and served, and we call it in this court, this court called it the October 29, 2002 order. Yes. Okay. And at page 3, the district court said, based on the evidence before it, the court finds that the independent expert fulfilled his function in determining the time impact of scope changes affected by ASI 106C and D and ASI 131 and CCDs 139, 155, and 156, and his findings with respect to the time impact may now be confirmed. The significance of this and the difference, the uniqueness of this case and this issue, by comparison to many of the other cases we've looked at, is that this court below had ordered the arbitrator to consider this specific issue. He actually considered two discrete issues in the confirming order. One was the 107 days as a predicate factual finding. The second was the interpretation of a so-called overtime agreement that the parties had submitted to him for consideration. Well, do you want us to say we have jurisdiction so that then you can say that the court was right in entering that as an order in front of the jury trial? We first would prefer that this court say you have jurisdiction and confirm the order of the court below. Yes, Your Honor. Well, but then you're going to go back and say that that made the trial court correct in what it did, right? Yes, Your Honor, the trial court is correct in what it did, but I think the court needs to understand exactly what happened in the trial court. When this arbitration award was entered... Well, I guess what I'm just seeing is you both have ulterior motives for what you want to use it in in your trial, as opposed to, and it's still not really answering my jurisdictional questions. And I think that's correct. I think what happened in the trial court doesn't answer the jurisdictional questions here. And you are correct. But I am seeing motives on both sides, and so... Without question, we are seeking to preserve the nine-and-a-half-month jury verdict, and we will be seeking in the Nevada Supreme Court... Right, and they want a new trial. And they want a new trial. And this is everyone's hope. This particular issue is one of many, many issues. Understand that the jury over nine months considered all the evidence that the arbitrator could not consider. And back to Your Honor's original question, the significance here and why this was a full and final stand-alone award, where the arbitrator considered his entire submission on this issue, is the simple fact that although things remained to be decided, they didn't remain to be decided by him. They only remained to be decided by the jury trial. As you may recall, this court previously affirmed the Federal Court's order permitting the jury trial to go forward. The jury trial was in its early stages. It lasted ultimately, as I've said, nine-and-a-half months. But it was in its early stages when the court confirmed this order. This award was confirmed because Venetian below, the appellant here, insisted that they would not allow the award and the clarification to be admitted into evidence in the jury trial, absent a confirmation of the district court. We then went to the district court, obtained the confirmation, and entered into evidence in the jury trial were the order, the confirming order, the award, and the clarification. So all of that happened really at the instance of the appellant here. Further, the language that you're seeing the appellant argue about why they say this is not a final award is language that is only in the arbitrator's award by way of explanation, because his scope was so limited, limited at their instance, because they did not agree that he had authority to consider all of the issues that the jury would ultimately consider, and limited because they proposed clarification language in the award. The simple fact is that this is a standalone, insular issue. It is a final decision of the arbitrator that covers the complete scope of the issue. There's nothing more that the arbitrator has to do, no further substantive act that the arbitrator has to perform in connection with this submission. This submission is over. And the only things that he mentions as limitations on his ability to make a final determination of what is a time extension or what were the damages the parties were intended to or an explanation of the limited nature of the scope of his submission. So once he entered this award, and the Court having found he fulfilled his function, and the Court below then confirming the award on those two factual findings, saying he's done what I told him to do in my order, he's done what the parties agreed that he would do in their contract, he's entered an award that is final as to those discrete issues, nothing remains for the arbitrator to do. The jury then must take these considerations, these fact findings, and look at the case from a broader perspective. And that's exactly what happened. Over a period of nine and a half months, the jury heard multiple witnesses, multiple evidence that permitted it to consider not just the 107 days and not just his finding on the arbitration overtime agreement, but further the as-built schedule analysis, the retrospective information, all of the things that by the parties' agreement the arbitrator was prohibited from considering. And further, let me address a point that the Court asked about earlier and that was I think misrepresented by co-counsel. There's an effort here to confuse the fact that the arbitrator had various scope change issues before him with the finality and the insularity of this particular submission. They are not related. These parties had a contract that contemplated that specific individual issues would be submitted to the arbitrator and that he would enter a final and binding award on each of those. That was contained in the contract that they ultimately incorporated into the preliminary scheduling order that the court below found as the authority to arbitrate. This issue is different. This issue on the time and the overtime agreement stands alone. The parties had a dispute about whether it was even arbitrable. They go to the court. The court then ordered them to arbitrate a specific issue with time hearings that lasted over a period of several weeks where he considered evidence, all the evidence pertinent to making this finding. He made the finding, as the court found, fulfilling his function as instructed. He included for purposes of clarity in his award what he did do and didn't do so that the ultimate fact finder, which he knew wasn't him, acknowledges wasn't him and which the confirming order said wasn't him, would know what he did and didn't consider. So as to this particular order, there's nothing more for the arbitrator to do. None of the other hearings, just the simple coincidence that the parties have other matters pending before this arbitrator, doesn't change the fact that this award and the confirming order stand alone. It was a specific submission, and it is very akin to the cases that this Court has previously considered in that connection, the Pacific Reinsurance case, which the Court recognizes the policy of being able to confirm an insular, stand-alone award of an arbitration panel. And an important point, I think, is made in that case at page 935, 1019, page 1023. It seems so obvious. Arbitrators have no power to enforce their decisions. Only courts have that power. The Arbitration Act and the function of the Arbitration Act is to enforce the parties' agreement. In this case, the parties had an agreement to make it singular, stand-alone, insular submission to this arbitrator. That's what the court below found. And to allow that to be confirmed by the court below is the only way that the parties are able to find finality, to accomplish the goals of the Federal Arbitration Act that allows a speedy resolution by affording finality to a stand-alone decision which determined exactly that. Ms. Mitchell, I know you're over time, but how did this particular, as you say, discrete scope contain a few issues? But how did this discrete scope, how did that get distinguished from all these other things that were before the arbitrator? How come this was the only portion that the parties were ordered to arbitrate? Because this subject matter did not, all of the other issues that were before the arbitrator involved his valuation, the money value for trade contractors. And I back up. Bovis was the construction manager. Under us were a number of trade contractors who had claims on the project. The arbitrator on the other issues was considering the money value owed to trade contractors on scope changes. This is the only arbitration that dealt with how he would have back at the time of the contract. That's why it's a little awkward because this fiction got created, the prospective versus retrospective. How he would have back at the time of the contract evaluated the time impact of these specific changes on the work. And he was prohibited by the parties' agreement and by the court order from considering the whole issue. All he could consider was the prospective issue of that time. The other issues dealt with what amounts were properly owed to the subcontractor. Exactly. And this dealt with how much credit for delay, or I guess that's the proper term, should be accorded between what would be, I guess, the general contractor and Venetian. Exactly. These are different disputes. Different disputes. And it is what he would have done. And I think the reason the confusion comes up, well, it doesn't read like a final order. It's because it doesn't finally decide the issue of a time extension. He never had the power to do that. The jury had to do that, always, because the agreement of these parties, as interpreted by the court, and that's not contested here, incidentally. They haven't come up here and said, well, that wasn't really what we agreed to. The agreement of the parties, as ordered by the court, was he can only look at this in a partial world, in a fictional world. He did that. He fulfilled his function. The jury did the rest. Thank you, counsel. Mr. Dial. Your Honor, I must draw the court's attention to the excerpt of Record 354. That is the order compelling arbitration. It is the order that sets forth what this court ordered the parties to arbitrate. The court, you will note on page 28, ordered that there was a PSO, that's the preliminary scheduling order, which the parties exchanged lists. That list is a part of Excerpt of Record 362. And the court ordered, according to the issues of entitlement, cost impact and time impact will only be valued prospectively as of the time the scope change is requested. The court ordered that the dollar and time impact of all the changes on the list be arbitrated prospectively. It is a gross misrepresentation to say that these issues are somehow different than all the other issues on the list. In fact, these issues are on the list. They're one of the 947 issues on the list. There's nothing special about these other than they came up early and the parties were fighting about what was and what was arbitrable and what would and would not. How do you explain I had it at ER 111, where it also appears, and Ms. Fletcher quotes from ER 104 of Venetian's Excerpts of Record, the second full paragraph, the third sentence that says, based on the evidence before it, the court finds the independent expert fulfilled his function in determining the timing. He says in his order, the fellow did what he was told to do. As to these issues, there's another 944 remaining. And when you consider all those, it will have an impact for the 107 days. Well, you're saying that the order to arbitrate dealt with all 900 or whatever? Yes, sir. Yes, sir. It ordered. Can you tell me where that order appears? Yes. It's the one I just cited you to. Well, you cited a tab number, maybe. Did you? A page number would be 42. Pardon me? 42? 42. Okay. Hold on there. Well, actually, that's not right. It starts with 30. Excuse me. It starts with. Well, that's the construction management agreement. No, no, sir. I cited you to the wrong point. The order is in here setting forth arbitration. It's 22. 22. Okay. This is the order by which the parties were compelled to arbitrate all of the issues on the list that they had exchanged. The list that they had exchanged begins on page 36. Excuse me now. Without addressing. I'm on page 27 of the excerpt. Without addressing the scope of 10-7, the court finds the parties agreed to arbitrate certain scope changes indicated by the signing of the PSO. Both parties exchanged lists delineating scope changes. Neither party contested the scope changes. The court finds that the PSO is essentially the party's agreement to arbitrate certain scope changes. And then he orders us to go arbitrate all of the scope changes on each of the parties' respective lists. And then he goes on to say that the issue to be determined will be the time and cost impact of each of those scope changes. If you look at the scope change list, it runs from page 36 through page 69. It has over 900 and something items of which the ones we're talking about are only a very few. The arbitration order was much broader than has been represented to this court. I wonder why the district court didn't say so. It did in his order, Your Honor. Remember, the only issues before him were these discrete issues as to whether they were just a part. And this is the only time that any party came before him to seek confirmation. Even though several other awards have been rendered and several more will be rendered. They have been rendered since this confirmation order was sought, and neither party has gone seeking confirmation because everyone understands until the all have been heard, there cannot be a final award on either liability or damages until all have been heard. What does he mean by there's a last sentence in his order? Issues of entitlement, cost and time impact will be valued prospectively. Oh, that's as of the time the changes are requested. Because the process in place involved it occurring during the construction process. All right. Thank you, counsel. This case is ordered submitted. To say that it's tricky is to put it mildly. Sands versus Culinary Workers.
judges: Thompson, Trott, Callahan